UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHRYSTAL M. THORNTON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No.: 3:23-cv-191-CLC-JEM |
| v. | ) | |
| | ) | |
| SEVIER COUNTY JAIL, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM & ORDER

The Court is in receipt of a pro se prisoner's civil rights Complaint under 42 U.S.C. § 1983 [Doc. 1], application for leave to proceed *in forma pauperis* [Doc. 2], and motion to waive fees [Doc. 9]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to proceed as a pauper, **DENIES** her motion to waive fees, and **DISMISSES** the Complaint for failure to state a claim.

I. **MOTIONS CONCERNING FEES**

Plaintiff filed a "Motion to Waive Fees and Fines" based on her incarceration and indigency [Doc. 9 at 1]. However, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs." *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131 (6th Cir. 1997); *see also* 28 U.S.C. § 1915(b)(1) ("[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."). Therefore, the Court is without authority to waive the filing fees associated with this case, and Plaintiff's motion to do so [Doc. 9] will be **DENIED**.

A review of Plaintiff's certified inmate trust account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee in a lump sum [*See* Doc. 9]. Accordingly, pursuant to § 1915, Plaintiff's motion to proceed *in forma pauperis* [Doc. 2] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in her inmate trust account for the six-month period preceding the filing of the Complaint. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1914(a), 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow her if she is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, §§ 801-10, 110 Stat. 1321 (1996), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." § 1915A(b); *see*

*also* § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [§§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**B. Allegations of Complaint**

On May 4, 2023, Plaintiff was placed on administrative segregation in the Sevier County Jail [Doc. 1 at 2, 3]. According to Defendant Rhett Rutledge, Major of the Sevier County Jail, Plaintiff's file revealed that she was placed on administrative segregation for threatening staff members on City Tele Coin[1] [*Id.* at 2]. When Plaintiff advised Defendant Rutledge that the threat allegations were false, he stated she was also on administrative segregation because she had aggravated kidnapping charges [*Id.* at 3]. Plaintiff contends that is not facing aggravated

---

[1] City Tele Coin provides inmate phone services for the Sevier County Jail. *See* City Tele Coin, https://www.citytelecoin.com/ (last visited July 12, 2023).

3

kidnapping charges, but rather, has only been accused of aggravated robbery by an unreliable witness [*Id.*]. In fact, Plaintiff maintains, officers at the facility state they do not know why she is there, and Plaintiff states she has never been in any physical altercations [*Id.*].

On February 28, 2023, and April 24, 2023, Plaintiff wrote grievances complaining that male trustees were allowed alone in the female control room, where they can watch three different dorms of women [*Id.* at 3]. Specifically, on April 24, 2023, a male trustee was taking apart the computer surveillance system in the female control room, and all the women in the dorm documented in writing that they did not feel safe [*Id.*]. When Plaintiff complained about the male trustee's presence in the female control room, she was told the event did not occur, even though Barbara Drennin, Defendant Cole, Defendant Dustin Floyd, and Defendant Rutledge were present when the trustee was taking apart the surveillance equipment [*Id.*]. Plaintiff believes her complaints upset Defendant Rutledge, who is the only person who can remove her from administrative segregation [*Id.*]. She also complains that Defendant Doris, who works in administration, "grabs on all [the] male trustees" [*Id.* at 2].

When Plaintiff was placed in administrative segregation on May 4, 2023, she was taken to the annex, where she was the only female [*Id.* at 4]. Plaintiff remained in the annex until approximately May 15, 2023, when she was brought back to the main jail and classified a "maxx out" inmate per Major Rutledge [*Id.*]. Plaintiff was placed in a cell with black mold someone had painted over, and her throat started swelling [*Id.*]. Plaintiff, who has had open-heart surgery, kicked the cell door until Sergeant Sutton came and threatened to use a TASER on her [*Id.*]. Plaintiff asked Sergeant Sutton if she knew what deliberate indifference was, and Sergeant Sutton handcuffed Plaintiff so tight that the nurse "had to check [Plaintiff] out" [*Id.*]. Plaintiff was then placed in a "nasty" holding cell on the men's side of the jail [*Id.*]. For three days, Plaintiff did not

4

receive a shower or time out of the cell, and second shift "handed [her] a sandwich [and] never came back" [*Id*.].

Plaintiff remained in the same cell from May 15, 2023, until she filled out her Complaint on May 25, 2023, and the cell was only cleaned one time during that period [*Id*. at 4, 5]. Officers only opened the cell to throw food to her, and they forgot to give Plaintiff her hour out and/or shower "many times" [*Id*.]. Plaintiff only received a change of clothes two times; her cell was cleaned and laundry done only when Officer Holt found out she was in the cell [*Id*.]. Plaintiff now thinks she may have shingles due to the alleged inhumane and traumatic treatment she received [*Id*.].

Aggrieved, Plaintiff asks the Court to order a mental evaluation and professional medical care for Plaintiff, to reprimand and possibly fire Defendants Rutledge and Floyd, to make the Sevier County Jail staff "take some sort of class on equal rights" and prisoner treatment, and to award her monetary damages for pain and suffering [*Id*. at 5].

    C.    **Analysis**

        1.    **Administrative Segregation**

            a.    **Due Process**

Liberally construing Plaintiff's Complaint, the Court first considers whether Plaintiff's allegations concerning her placement in administrative segregation demonstrate a liberty interest that is protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of a right or interest imposes on her an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

5

Plaintiff has no liberty interest in either her housing placement or in her security classification. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). The Court of Appeals for the Sixth Circuit has stated on several occasions that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citations omitted); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

Indeed, when administrative segregation is considered atypical and significant, it is only in "extreme circumstances," *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008)), such as a "prolonged or indefinite" period in restrictive conditions, *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). Here, Plaintiff maintains that she was placed on administrative segregation on May 4, 2023, and she presumably filed the instant lawsuit when she signed it on May 25, 2023[2] [*See* Doc. 1 at 3, 5]. Plaintiff was transferred from the Sevier County Jail shortly after signing her Complaint [*See* Doc. 2-1; Doc. 4 at 1–2]. An approximate three-week stay in segregation is insufficient to establish a cognizable due process claim. *See, e.g.*, *Bishawi,* 628 F. App'x at 344 (holding sixty-nine days in administrative segregation did not constitute a due

---

[2] A prisoner's petition is deemed "filed" when it is submitted to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 273 (1988) (holding *pro se* prisoner's notice of appeal filed at moment of delivery to prison authorities for forwarding to district court); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (holding federal habeas corpus petition is deemed filed when handed to prison authorities for mailing). Under Sixth Circuit precedent, the date Petitioner signed the document is typically deemed the date of handing it to the prison authorities for mailing. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted).

6

process violation); *Joseph*, 410 F. App'x at 868 (holding sixty-one days in segregation is not atypical and significant).

Additionally, Plaintiff's claim that she was placed in administrative segregation based on false allegations fails to implicate Plaintiff's constitutional rights because inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). This is true even if the charge later turns out to be unfounded. *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (table) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983.") (citing *Riley v. Church*, Nos. 95-1192, 95-1193, 1996 WL 145846 (6th Cir. Mar. 29, 1996)). Here, Plaintiff does not even allege that she received any disciplinary charges based on the allegedly false fabrications against her, but rather, only that she was placed into administrative segregation. Therefore, Plaintiff's allegation that fabricated allegations were used to place her in administrative segregation fails to state a viable due process claim.

Accordingly, the Court will **DISMISS** any due process claim based on Plaintiff's confinement in administrative segregation.

### b. Cruel and Unusual Punishment

The Court next considers whether Plaintiff's placement in administrative segregation violates the Eighth Amendment's prohibition against cruel and unusual punishments. An Eighth Amendment conditions of confinement claim contains an objective and subjective component. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

As to the objective element, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the

7

meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, only conditions of confinement that involve "the wanton and unnecessary infliction of pain," that are "grossly disproportionate to the severity of the crime," or that result in the denial of the "minimal civilized measure of life's necessities" will violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346–47. Therefore, in examining claims alleging that the conditions of a plaintiff's confinement violate the Eighth Amendment, courts must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the subjective element, the plaintiff must establish that the prison official acted with a sufficiently culpable state of mind—deliberate indifference to a substantial risk that the prisoner would suffer serious harm. *See Wilson*, 501 U.S. at 303; *Farmer*, 511 U.S. at 834.

Mere "placement in segregation" will not sustain an Eighth Amendment claim because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Harden-Bey*, 524 F.3d at 795 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Instead, Plaintiff may support an Eighth Amendment claim based on her segregated status only by alleging that the segregation deprived her of some basic human need. *See Rhodes*, 452 U.S. at 347–48; *see also Harden-Bey*, 524 F.3d at 795 (finding confinement in administrative segregation "three years and running" failed to state Eighth Amendment claim). Here, Plaintiff complains that once she was placed in a "maxx cell" on May 15, 2023, she was denied showers and recreation time for three days [Doc. 1 at 4]. She also insinuates that she did not receive regular food from second-shift staff members during this time [*Id.*]. Plaintiff additionally complains that, following

8

that three-day period, she was sometimes "forgotten" and did not receive her scheduled shower or recreation [*Id.*].

Plaintiff's segregated status fails to satisfy the elements of a deliberate indifference claim. An occasional three-day deprivation of showers, clean clothes, and recreation does not deprive an inmate of "the minimal civilized measure of life's necessities." *See Rhodes*, 452 U.S. at 347; *Richmond*, 450 F. App'x at 455 ("[T]he deprivation of a shower and other personal hygiene items for a 'brief span of time . . . ' is not actionable conduct." (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)); *Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000) (holding denial of clean linens for a short period of time does not constitute Eighth Amendment violation); *Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995) (holding four-day inmate placement in strip cell without clothes, water, mattress, legal mail, or hygienic supplies did not violate Eighth Amendment). And there is no bright-line rule requiring inmates to receive an hour of exercise per day. Rather, prisoners are entitled to enough exercise to maintain reasonably good physical and mental health. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). Here, the occasional denial of recreational privileges over a three-week period is insufficient to meet the Eighth Amendment's objective element, and Plaintiff's allegation that officers occasionally "forgot" her suggests at most negligence, which fails to satisfy the subjective prong. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982) (noting "mere negligence" is insufficient "to give rise to culpability under the eighth amendment").

Further, Plaintiff's allegation that she was denied food by second shift officers during her initial three-day stay in administrative segregation does not allow the Court to plausibly infer Plaintiff was deprived of adequate nutrition to promote good health such that it could have violated her constitutional rights. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional

9

right has been violated); *see also Adams v. Hardin Cnty. Det. Center*, No. 3:16-CV-P29-CRS, 2016 WL 2858911, at *6 (W.D. Ky May 12, 2016) ("Courts have generally held that allegations of weight loss alone fall short of stating an Eighth Amendment claim." (citations omitted)). Therefore, none of Plaintiff's allegations concerning her placement in administrative segregation are sufficient to state a viable § 1983 claim for cruel and unusual punishment. The Court will **DISMISS** Plaintiff's Eighth Amendment claim.

### 2. Retaliation

Plaintiff suggests that Defendant Rutledge placed her in administrative segregation in retaliation for filing grievances [Doc. 1 at 3]. To establish a retaliation claim, Plaintiff must show:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).

Plaintiff's allegations are sufficient to satisfy the first two prongs of the retaliation test. The filing of nonfrivolous grievances on one's own behalf is protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). And "restricting a prisoner's housing by placing [her] in administrative segregation constitutes an adverse action." *Hill*, 630 F.3d at 474. But her claim fails to meet the third prong because Plaintiff has set forth no factual allegations from which the Court could plausibly infer that Defendant Rutledge's decision to place her in administrative segregation was motivated by her protected conduct. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (alteration in original) (quoting *Gutierrez*

10

*v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Therefore, the Court will **DISMISS** Plaintiff's retaliation claim.

### 3. Conditions of Confinement

Plaintiff contends that on May 15, 2023, she was placed in a cell "full of black mold someone had painted over" [Doc. 1 at 4]. She contends that she was then placed in a "nasty" cell on the men's side of the jail, where she remained located when she filed her Complaint [*Id*.]. The Court construes these allegations as a challenge to Plaintiff's conditions of confinement, which has both objective and subjective elements. *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The objective element requires an allegation of a "sufficiently serious" deprivation. *Id.* Only allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities'" support a cognizable conditions-of-confinement claim. *Hudson*, 503 U.S. at 8–9 (citations and quotations omitted). To satisfy the subjective element, the plaintiff must establish that the prison official acted with a sufficiently culpable state of mind—that of deliberate indifference to a substantial risk that the prisoner would suffer serious harm. *See Wilson*, 501 U.S. at 303; *Farmer*, 511 U.S. at 834.

Plaintiff's allegations are insufficient to raise a conditions-of-confinement claim. Plaintiff does not explain how she knows the first cell she was placed in contained black mold, particularly because she alleges it was painted over. Even assuming the cell did contain mold, however, Plaintiff was in the cell for less than a day and was moved from that cell when she complained. Plaintiff's allegation that she was then placed in a "nasty" cell is insufficient to allow the Court to infer that the conditions posed a serious threat to her health or safety that jail officials subsequently ignored. Therefore, Plaintiff has failed to demonstrate either prong of a conditions-of-confinement claim, and the Court will **DISMISS** her claim.

### 4. Excessive Force

Plaintiff contends that Sergeant Sutton handcuffed her so tightly that "the nurse had to check [her] out" [Doc. 1 at 4]. The Court construes this as an excessive-force claim. In considering whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry: (1) the subjective component of "whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm," and (2) the objective component of whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency." *Hudson*, 503 U.S. at 6, 9 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An Eighth Amendment claim does not have to be supported by a "significant injury," but it must be more than de minimis injury unless the force used is "of a sort repugnant to the conscience of mankind." *Id*. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

A rational inference from Plaintiff's allegations is that she was handcuffed to be moved to a different cell. Moreover, Plaintiff complains only of the tightness of the handcuffs, rather than the handcuffing itself. "Not all allegations of tight handcuffing, however, amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005). Here, Plaintiff complains only that she was handcuffed so tightly that she was later evaluated by a nurse. She does not allege that she complained to Sergeant Sutton that the handcuffs were too tight but he ignored her, nor does she allege that she suffered any injury, much less more than de minimis injury, because of the allegedly tight handcuffs. *See Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (holding pain and swelling caused to plaintiff's wrists were insufficient injuries under Eighth Amendment). Under these circumstances, the Court finds Plaintiff's allegations insufficient to raise a plausible claim of excessive force under the Eighth Amendment, and the Court will **DISMISS** this claim.

### 5. Threats

Next, the Court finds that Plaintiff's claim that Defendant Sutton threatened to use a TASER on her fails to state a claim upon which relief may be granted under § 1983 because verbal harassment or threats made by prison officials toward an inmate do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983."). Accordingly, the Court will **DISMISS** Plaintiff's claim that Defendant Sutton threatened her.

### 6. Standing

Plaintiff maintains that Defendant Doris with Administration ("Doris") "grabs on all [the] male trustees" [Doc. 1 at 2]. However, Plaintiff may only challenge alleged violations of her own rights. Therefore, to the extent Plaintiff seeks relief on behalf of the male trustees, she lacks standing to do so. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) ("[A] prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners"). Therefore, the Court will **DISMISS** Plaintiff's claim against Defendant Doris.

### 7. Male Trustees in Female Areas

Plaintiff contends that male trustees were allowed alone in the control room surveilling three female dorm areas on February 28, 2023, and April 24, 2023, which made her feel unsafe [Doc. 1 at 3].

Typically, prisoners maintain no right to privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984) ("A right of privacy in traditional Fourth Amendment terms is

13

fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."). However, the Sixth Circuit has recognized an inmate's limited right to bodily privacy under the Fourth Amendment in circumstances where the prisoner is forced to expose himself to a member of the opposite sex. *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) ("[A] prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked . . . would provide the basis of a claim on which relief could be granted" (citations omitted)); *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (observing right to privacy claim under Fourth Amendment where male inmate was forced to endure outdoor strip search in presence of female correctional officers). Plaintiff has not alleged similar facts to suggest that male trustees have been permitted to view her in some exposed manner. Therefore, she has not stated a plausible claim that her right to privacy has been violated.

Further, it is well settled that prison officials have a duty to protect inmate safety. *Farmer*, 511 U.S. at 832–33. Liability attaches to a prison official's failure to protect a prisoner only where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837. Mere negligence is insufficient. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013).

The Court finds Plaintiff's factual allegations insufficient to allow the Court to plausibly infer that the presence of male trustees in the control room on two scattered dates violated her Eighth Amendment rights. First, Plaintiff does not allege that she was endangered because male trustees were in the control room surveilling the female dormitories. Second, she maintains that on one of these occasions, the control room operator, Defendant Cole, Defendant Rutledge, and

Defendant Floyd were all present. Therefore, Plaintiff's allegations that trustees were allowed alone in the control room appears inconsistent. Additionally, Plaintiff does not indicate whether the practice continued after she filed a grievance concerning the conduct; thus, she has failed to allege that Defendants disregarded her concerns. Accordingly, the Court will **DISMISS** this claim.

### 8. **Defendants**

Plaintiff has named as Defendants the Sevier County Jail and individual Defendants Rhett Rutledge, Sergeant Cole, Sergeant Sutton, Sergeant Cooper, Lieutenant Dustin Floyd, Supervisor Samantha Lovelady, and Doris with Administration [Doc. 1 at 2]. The Court has addressed Plaintiff's claims against Defendants Rutledge, Sutton, and Doris and found they should be dismissed. Therefore, the Court will **DISMISS** Defendants Rutledge, Sutton, and Doris.

To state a claim against the remaining Defendants in their individual capacities, Plaintiff must adequately plead that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"). Plaintiff's Complaint contains no allegations of constitutional wrongdoing by Defendants Sergeant Cole, Sergeant Cooper, Lieutenant Dustin Floyd, or Supervisor Samantha Lovelady. Accordingly, the Court will **DISMISS** Defendants Sergeant Cole, Sergeant Cooper, Lieutenant Dustin Floyd, and Supervisor Samantha Lovelady.

15

This leaves Defendant Sevier County Jail. However, a jail is a building, not an entity subject to suit under § 1983. *Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-CV-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. § 1983." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). And Plaintiff does not attribute any wrongdoing to a custom or policy of Sevier County, such that the county itself could be liable under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs"). Therefore, Plaintiff's Complaint fails to state a claim as to the Sevier County Jail, and the Court will not liberally construe the Complaint against Sevier County. The Court will **DISMISS** Defendant Sevier County Jail.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to waive fees and costs [Doc. 9] is **DENIED**;

2. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

3. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

4. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

5. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

6. Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**